UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| 1306 LOUNGE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-3320 (RBW) |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The plaintiff, 1306 Lounge, LLC, brings this civil action against the Small Business Administration (the "Agency") and Isabella Casillas Guzman, in her official capacity as the Administrator of the Small Business Administration (collectively the "defendants"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. See Second Amended Complaint ("2d Am. Compl.") ¶¶ 55–69, ECF No. 37. As the basis for bringing this case, the plaintiff asserts that the Agency's denial of its grant application was arbitrary and capricious, see id. ¶¶ 55–63; the Agency's actions were contrary to law, see id. ¶¶ 64–66; and the Agency's decision to reject its grant application was unsupported by substantial evidence, see id. ¶¶ 67–69. Currently pending before the Court are (1) the plaintiff's motion for the Court to consider extra-record evidence, see Plaintiff's Motion for Consideration of Extra-Record Evidence and Memorandum of Points and Authorities in Support ("Pl.'s Mot. for Consideration of Extra-R. Evid.") at 1, ECF No. 39; (2) the plaintiff's motion for summary judgment and for a preliminary injunction, see Plaintiff's Motion for Summary Judgment Ordering Remand and Preliminary Injunction During Remand ("Pl.'s Mot.

for Summ. J.") at 1, ECF No. 41; and (3) the defendants' combined cross-motion for summary judgment, opposition to the plaintiff's motion for summary judgment, opposition to the request for a preliminary injunction and opposition for the Court to consider extra-record evidence, see Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motions for Summary Judgment, a Preliminary Injunction, and to Consider Extra-Record Evidence ("Defs.' Mot.") at 1, ECF No. 48.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must (1) deny the plaintiff's motion for consideration of extra-record evidence, (2) deny the plaintiff's motion for a preliminary injunction, (3) deny the plaintiff's motion for summary judgment, and (4) grant the defendants' motion for summary judgment.

## I.    BACKGROUND

### A.    Factual Background

#### 1. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act

The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act") was signed into law on December 27, 2020, Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022–32 (2020) (codified at 15 U.S.C. § 9009a), to provide relief to entertainment companies impacted by the COVID-19 pandemic, 166 Cong. Rec. S7901 (daily ed. Dec. 21, 2020).  The Act provides grants to eligible persons or entities, including, in relevant part here, "live venue operator[s] or promoter[s], theatrical producer[s], or live performing arts organization operator[s.]" 15 U.S.C. § 9009a(a)(1)(A).  And, this eligible category of this subsection:

(A) means—

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendants' Cross-Motion For Summary Judgment and Reply in Support of Plaintiff's Motions for Summary Judgment, Consideration of Extra-Record Evidence, and Preliminary Injunction During Remand ("Pl.'s Reply"), ECF No. 50; and (2) the defendants' Reply in Further Support of Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. 52.

>> (i) an individual or entity—
>
>> (I) that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts . . . or other events by performing artists for which—
>
>>> (aa) a cover charge through ticketing or front door entrance fee is applied; and
>>>
>>> (bb) performers are paid in an amount that is based on a percentage of sales, a guarantee (in writing or standard contract), or another mutually beneficial formal agreement; and
>
>> (II) for which not less than 70 percent of the earned revenue of the individual or entity is generated through . . . cover charges or ticket sales, production fees or production reimbursements, . . . or the sale of event beverages, food, or merchandise[.]

Id. § 9009a(a)(3)(A)(i)(I)–(II).  An entity receiving funding under the Act, receives the lesser of "the amount equal to 45 percent of the gross earned revenue of the . . . entity during 2019, or . . . $10,000,000."  Id. § 9009a(c)(1)(a).  While the resolution of this case was pending, "[i]n December 2022, Congress rescinded $459 million in unobligated [Shuttered Venue Operators Grant or] [('\]SVOG[')] funds[,]" Pl.'s Mot. for Summ. J. at 3, and "[o]n July 28, 2023, the government advised the Court that, as of that date, approximately $23 million in recovered SVOG funds [were still] available for SVOG grants[,]" id. (citing Notice Regarding Mootness, Exhibit ("Ex.") 1 (Letter from Assistant United States Attorneys Brian P. Hudak, Jane M. Lyons, Bradley G. Silverman regarding Concert Inv., LLC v. Small Bus. Admin., No. 22-5253 (D.C. Cir.)) at 1–2 (Jul. 28, 2023), ECF No. 23-1).

### 2. The Plaintiff's Application

"On April 26, 2021, [the plaintiff] applied for a [SVOG,]" under 15 U.S.C. § 9009a as a live venue operator.  Id. at 3 (citing Administrative Record ("A.R.") at 000001–02); Defs.' Mot. at 2.  In its application, the plaintiff stated that it is "a 'live music and performance venue

providing entertainment and food and beverage services[,]' and was in full operation as of February 29, 2020." Pl.'s Mot. for Summ. J. at 3 (alterations in original) (citing A.R. at 000334). The plaintiff stated it "had 'dozens of acts' scheduled to perform the week of March 23, 2020, and all were cancelled because of the COVID-19 pandemic." Id. at 3–4. Additionally, the plaintiff stated that "[a] curfew in Miami-Dade County[, Florida,] until April 12, 2021[,] prevented the venue from reopening until then." Id. at 4.

In its application, the plaintiff submitted documentation of "a sampling of its events, including live-event social media marketing materials [ ], invoices for sound mixing, public address, and lighting equipment [ ], and documentation of bookers, promoters, and security personnel [ ]." Id. (internal citations omitted) (citing A.R. at 000344–56, 000378–98, 000342–43, 000357, 000361–63, 000365–66, and 000360, 000367). The plaintiff's submissions "document[ed] . . . multiple live shows in 2019 and 2020[,]" id. (citing A.R. at 000413, 000372, 000373, 000429, 000344, 00390–91, 000350, 000388, 000354, 000380, 000345, 000389, 00348, 000381, 000347, 000379, 000387, 000349, 000382, 000353, 000385, 000378, 000415, 000346, 000386, 000351, 000384, 000383); "its event schedules for January and February of 2020, which depict[ed] an average of four live music events for each week[,]" id. (citing A.R. at 000472–73); "a sample ticket report for" a show, id. at 4–5 (citing A.R. at 000391); and "its profit and loss statements for 2019 showing earned revenue from 'Bar Sales' and 'Ticket/Door Income[,]'" id. at 5 (citing A.R. at 000368–71).

However, in its application, the plaintiff answered "No" to question twenty-two, which asked: "Are performers paid by a percent of sales, guarantee or other mutually beneficial formal agreement? (Free performances or performances for tips only do not qualify.)" Id. at 5 n.2; Defs.' Mot. at 2 (citing A.R. at 12). "On August 2, 2021, [the defendants] denied [the plaintiff]'s

4

application[,]" Defs.' Mot. at 2 (citing 2d Am. Compl. ¶ 29); Pl.'s Mot. for Summ. J. at 5, but, the denial did not explain "why the agency found the [plaintiff] ineligible[,]" Pl.'s Mot. for Summ. J. at 5; see Defs.' Mot. at 3.

The plaintiff "submitted its appeal of the denial" on August 15, 2021. Pl.'s Mot. for Summ. J. at 5 (citing A.R. at 000399). The appeal included "additional documentation, including [the plaintiff's] 2020 profit and loss statement showing revenue from ticket/door sales and bar sales [ ], sample performance agreements with artists and invoices for payments to artists [ ], sample marketing materials and ticket sales reports from shows in 2021 [ ], and invoices for sound and lighting [ ]." Id. (internal citations omitted) (citing A.R. at 000409–12, 000469, 000413–83, 000440–59, 000487–533, 000460–65).

"On October 25, 2021, the [the defendants] denied the appeal[.]" Id. (citing A.R. at 000020–21). The denial "stat[ed] that [the plaintiff's] application was denied[,] 'at least in part[,]' based on reasons numbered 10 ('[d]id not meet the principal business activity standard for the entity type under which applied'), 11 ('[d]id not meet one or more of the eligibility criteria specific to the entity type under which applied'), and 14 ('[i]ncomplete application')." Id. at 5–6 (third, fourth, and fifth alteration in original) (citing A.R. at 000020–21).

"On June 22, 2023, [the defendants] rescinded [their] initial denial of [the plaintiff's] application, and on August 2, 2023, [the defendants] issued a new decision, this time providing a statement of [their] grounds for denying [the plaintiff]'s application." Defs.' Mot. at 2; see Pl.'s Mot. for Summ. J. at 6. "The decision state[d] that [the plaintiff] did not present sufficient evidence that it pays performers, sells tickets for its events so as to show [its] principal business activity [operated] as a live venue operator, and [that it] derives at least 70% of earned revenue from qualifying events." Pl.'s Mot. for Summ. J at 6 (citing A.R. at 000682–87).

5

B.     **Procedural Background**

On October 28, 2022, the plaintiff filed its Complaint in this case, see Complaint for Declaratory and Injunctive Relief ("Compl.") at 1, ECF No. 1, and on November 13, 2023, the plaintiff filed its Second Amended Complaint, see 2d Am. Compl. at 2.  On December 4, 2023, the plaintiff filed its motion for summary judgment and a preliminary injunction, see Pl.'s Mot. for Summ. J. at 1, and its motion for consideration of extra-record evidence, see Pl.'s Mot. for Consideration of Extra-R. Evid. at 1.  On January 15, 2024, the defendants filed their cross-motion for summary judgment and opposition to the plaintiff's motions, see Defs.' Mot. at 1.  On February 8, 2024, the plaintiff filed its opposition to the defendants' cross-motion and reply in support of its motions, see Pl.'s Reply at 1, and on March 1, 2024, the defendants filed their reply in further support of their cross-motion for summary judgment, see Defs.' Reply at 1.

## II.     STANDARDS OF REVIEW

A.    **Motions for Injunctions and Restraining Orders Pursuant to Federal Rule of Civil Procedure 65**

Under Federal Rule of Civil Procedure 65(a), a "court may issue a preliminary injunction." Fed. R. Civ. P. 65(a).

> A party moving for a preliminary injunction must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

Changji Esquel Textile Co. v. Raimondo, 573 F. Supp. 3d 104, 110 (D.D.C. 2021) (Walton, J.) (internal quotation marks omitted) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).  "A preliminary injunction is an extraordinary and drastic remedy," Munaf v. Geren, 553 U.S. 674, 689–90 (2008) (internal quotation marks omitted), "[that] is never awarded as of right," id. at 690.  "In seeking a preliminary injunction, 'the

movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" Id. (quoting Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014)). However, "[w]hen the defendant is the government, factors (3) and (4) merge." Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv., 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach. See Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown"). Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014). And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'" Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

B.  **Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and the Administrative Procedure Act**

A court may grant a Rule 56 motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when reviewing agency action under the APA, "the summary judgment standard functions slightly differently, because 'the reviewing court generally . . . reviews the [agency's] decision as an appellate court addressing issues of law.'" Pol'y & Rsch.,

7

LLC v. U.S. Dep't of Health & Hum. Servs., 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting Henry v. Sec'y of the Treasury, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)).

When reviewing agency action being challenged by a motion for summary judgment, courts will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; see New LifeCare Hosps. of N.C., LLC v. Becerra, 7 F.4th 1215, 1222 (D.C. Cir. 2021) (explaining that the district court "review[s] the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence[]").

In assessing whether agency action is arbitrary and capricious, "[a] reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]'" Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). In rendering its decision, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)); see also Fulmen Co. v. Off. of Foreign Assets Control, 547 F. Supp. 3d 13, 23 (D.D.C. 2020). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." State Farm, 463 U.S. at 43. A "party challenging an agency's action as arbitrary and capricious bears the burden of proof." City of Olmsted Falls v. Fed. Aviation Ass'n, 292 F.3d 261, 271 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

### III.  ANALYSIS

A.  **Whether the Plaintiff Is Entitled to Consideration of Extra-Record Evidence**

First, "[the] plaintiff requests [that] the [C]ourt consider extra-record evidence in the form of the Declaration of Bradley Knoefler, Manager of [the plaintiff]," Pl.'s Mot. for Consideration of Extra-R. Evid. at 1, "explain[ing] that if the [plaintiff] had known why its application was denied it would have presented additional evidence to demonstrate its eligibility," id. The plaintiff argues that "the [defendants'] procedural failure [to inform the plaintiff of the reason for its application denial before its administrative appeal] presents 'serious questions' about whether the agency considered all the relevant factors and constitutes a gross procedural deficiency that warrants consideration of [the] Declaration and attachments as extra-record evidence." Id. at 4–5.  The plaintiff relies on Esch v. Yeutter, 876 F.2d 976, 992–93 (D.C. Cir. 1989), explaining that in Esch, "the D.C. Circuit affirmed the district court's consideration of extra-record evidence where the agency had failed to inform administrative appellees of the reasons for an adverse decision until very late in the administrative process." Id. at 4.  The plaintiff elaborates that, "[the] procedural failure presented 'serious questions' about whether the agency decisionmakers 'considered all relevant factors in reaching their determinations.'"  Id. (quoting Esch, 876 F.2d at 993).

In response, the defendants contend that the Court should not grant the motion because "[the defendants did not] ostensibly [err] in denying [the plaintiff's] application without explaining [their] reason for doing so."  Defs.' Reply at 4; see also infra Section III.C.  The defendants further explain that "[the plaintiff] continues to rely on Esch, but as [the d]efendants previously explained, Esch does not speak to a situation where a plaintiff affirmatively

9

demonstrated on the face of its own application that it is ineligible for the relief sought." Defs.' Reply at 4–5 (internal citation removed).

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). Thus, in reviewing an agency action, "[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743–44 (1985). "The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010) (internal quotation marks removed) (quoting Com. Drapery Contractors, Inc. v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998)). Therefore, "courts have developed a number of exceptions countenancing use of extra-record evidence." Esch, 876 F.2d at 991. These exceptions are:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Id. In its decisions, however, this Circuit has taken a more "restrictive approach" to the applicability of these exceptions, accord Silver State Land, LLC v. Beaudreau, 59 F. Supp. 3d 158, 165 (D.D.C. 2014); see Salazar, 616 F.3d at 514 ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper

10

behavior or when the record is so bare that it prevents effective judicial review."), and only applies the exceptions when there is first a showing of a "serious question about the procedural validity of the challenged agency action," Silver State Land, LLC, 59 F. Supp. 3d at 164 (internal quotation marks omitted) (quoting Esch, 876 F.2d at 991). "Moreover, [u]nderlying all of these exceptions is the assessment that resort[ing] to extra-record information [is necessary] to enable judicial review to become effective." Id. (alterations in original) (internal quotation marks omitted) (quoting Calloway v. Harvey, 590 F. Supp. 2d 29, 38 (D.D.C. 2008)). Accordingly, the consideration of extra-record evidence "is the exception, not the rule." Salazar, 616 F.3d at 514.

Here, utilizing the "restrictive" approach adopted by this Circuit, the plaintiff has not shown that there were any "serious question[s] about the procedural validity" of its application denial. Silver State Land, LLC, 59 F. Supp. 3d at 164–65. The defendants denied the plaintiff's application because the plaintiff itself stated that it did not meet a requirement that was listed in three separate locations on the grant application form. See 15 U.S.C. § 9009a(a)(3)(A)(i); A.R. at 000586–96 (SVOG Eligibility Matrix); A.R. at 000597–637 (SVOG Frequently Asked Questions April 23, 2021). The record, therefore, is not so "bare" that "judicial review [is] [ ] [in]effective." Silver State Land, LLC, 59 F. Supp. 3d at 164. Rather, the record is clear that the plaintiff submitted an application in which it stated it did not meet the mandatory requirements, which entitled the defendants to reject its application. No additional evidence would demonstrate the plaintiff's eligibility because it stated it was not eligible for a grant by answering "No" to a question that asked if it met a mandatory requirement. Pl.'s Mot. for Summ. J at 5 n.2. Accordingly, the plaintiff's motion for the consideration of extra-record evidence is denied.

11

B.   **Whether the Plaintiff Is Entitled to a Preliminary Injunction**

In its summary judgment motion, the plaintiff requests a "preliminary injunction directing the [defendants] to record an obligation of $269,294.40 as owed to [the plaintiff] so that those funds will be preserved during remand." See Pl.'s Mot. for Summ. J. at 12. "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [(1)] that [it] is likely to succeed on the merits, [(2)] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in [its] favor, and [(4)] that an injunction is in the public interest." Id. at 20. The third and fourth factors "merge when the government is a party to the litigation." Changji Esquel Textile Co., 573 F. Supp. 3d at 117 (internal quotation marks omitted) (quoting Afghan Yar Int'l Constr. Co. v. U.S. Dep't of State, No. 21-1740 (CKK), 2021 WL 3472275, at *18 (D.D.C. Aug. 6, 2021)). "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." Davis, 571 F.3d at 1292.

"In ruling on a preliminary injunction[,] a key issue—often the dispositive one—is whether the movant has shown a substantial likelihood of success on the merits." Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev., 639 F.3d 1078, 1083 (D.C. Cir. 2011). The plaintiff argues that it will succeed on the merits because the agency's denial was arbitrary and capricious, see Pl.'s Mot. for Summ. J. at 10, while the defendants argue that the plaintiff will not be successful because the denial of the plaintiff's grant application was self-explanatory, see Defs.' Mot. at 8. For the reasons discussed below, infra Section III.C, the Court finds that the defendants' August 2021 denial was self-explanatory, and not arbitrary and

capricious—thus, the plaintiff could not succeed on the merits.  This finding alone precludes the plaintiff from receiving an injunction and "the Court need not consider whether the plaintiff[] [has] met the irreparable injury factor, nor the other remaining factors . . . ."  Changji Esquel Textile Co., 573 F. Supp. 3d at 117–18.  Accordingly, the Court must deny the plaintiff's motion for a preliminary injunction.

C.     **Whether the Defendants' Denial of the Plaintiff's Grant Application Was Arbitrary and Capricious or Self-Explanatory**

The Court, having denied the plaintiff's motions for extra-record evidence and for a preliminary injunction, next considers the plaintiff's argument that "[t]he [defendants'] [d]enial [wa]s [a]rbitrary and [c]apricious[,]" Pl.'s Mot. for Summ. J. at 7, because "[t]he [defendants] failed to give any reason for denying the [plaintiff]'s SVOG application in August 2021[,]" id. at 8, and "did not inform the [plaintiff] of the reason before its administrative appeal[,]" id.  The plaintiff explains that "[h]ad the [defendants] identified the reason [they] now give[] [in their August 2023 denial] . . . when [they] denied the application in August 2021, the [plaintiff] would have been able to target its administrative appeal to what the [defendants] found to be deficiencies in its application."  Id.  Specifically, the plaintiff notes that "[it] could have submitted more comprehensive evidence of its payment of performing artists, that its performances are ticketed, and that all of its bar sales occurred during its performances[.]"  Id.  Therefore, the plaintiff contends that the defendants "failed to consider the relevant factors in deciding [the plaintiff's] administrative appeal."  Id. at 9.  As a result of these omissions, the plaintiff claims, "[t]he [defendants'] final decision on the appeal, consequently, is arbitrary and capricious."  Id. (citing State Farm, 463 U.S. at 43).

In response, the defendants argue that their denial was not arbitrary and capricious because the basis for the denial was "self-explanatory[.]"  Defs.' Mot. at 3.  The defendants

13

contend that the denial was "self-explanatory" because "[the plaintiff] answered 'No' to a question that asked whether it satisfied a mandatory eligibility requirement." Id. at 5. The defendants reason, "[t]hat answer self-evidently indicated that [the plaintiff] is ineligible for a grant, given that the paid-performers requirement is a mandatory eligibility requirement under the statute's plain text." Id. (citing 15 U.S.C. § 9009a(a)(3)(A)(i)(I)(bb)). Therefore, the defendants argue that "because the denial is self-explanatory, it did not require an express statement of [the] grounds for the denial." Id. at 6. The Court will address each argument in turn.

5 U.S.C. § 555(e) provides that, "[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e). The Supreme Court has held that an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" State Farm, 463 U.S. at 43 (quoting Burlington Truck Lines, 371 U.S. at 168). Thus, "[a] fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action . . . except in affirming a prior denial or when the denial is self-explanatory." Amerijet Int'l, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal quotation marks omitted) (quoting Tourus Recs., Inc. v. Drug Enf't Admin., 259 F.3d 731, 737 (D.C. Cir. 2001)).

In denying an application, "the core requirement is that the agency explain why it chose to do what it did." Tourus Recs., Inc., 259 F.3d at 737 (internal quotation marks omitted) (quoting Henry J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 DUKE L.J. 199, 222 (1969)). "This requirement not only ensures

14

the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review." Tourus Recs., Inc., 259 F.3d at 737. Further, the denial "must be one of reasoning; it must not be just a conclusion; it must articulate a satisfactory explanation for its action." Butte Cnty. v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010) (internal quotation marks omitted) (citing Tourus Recs., Inc., 259 F.3d at 737). However, the denial only requires a "minimal" explanation, id., that "probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review." Roelofs v. Sec'y of Air Force, 628 F.2d 594, 601 (D.C. Cir. 1980).

However, an agency does not need to give even a "minimal" explanation if the reason for a denial is self-explanatory. See Roelofs, 628 F.2d at 600 ("There is an exception to [5 U.S.C. § 555(e)] when the denial is 'self-explanatory.'"). A denial is self-explanatory when an applicant's application is in "such a form that its mere denial fully informs the party of all he would otherwise be entitled to have stated." Id. at 600 n.33; S. Rep. No. 79-752, at 206 (1945). But, "this exception [ ] applies [only] to a situation where the denial, or the continuation of the grounds of a prior denial, 'fully informs' the person making the request." Roelofs, 628 F.2d at 601.

To reiterate, the plaintiff argues that "[t]he [defendants'] [d]enial [wa]s [a]rbitrary and [c]apricious[,]" Pl.'s Mot. for Summ. J. at 7, because "[t]he [defendants] failed to give any reason for denying the [plaintiff]'s SVOG application in August 2021[,]" id. at 8, and "did not inform the [plaintiff] of the reason before its administrative appeal[,]" id. On the other hand, the defendants argue that the denial was not arbitrary and capricious due to the fact that it was "self-

15

explanatory" because "[the plaintiff] answered 'No' to a question that asked whether it satisfied a mandatory eligibility requirement."  Defs.' Mot. at 5.

It is undisputed that the defendants did not provide a statement of the grounds for their August 2021 denial.  See Pl.'s Mot for Summ. J. at 5; Defs.' Mot at 2.  However, the question in its application to which the plaintiff answered "No" asked, "[a]re performers paid by a percent of sales, guarantee or other mutually beneficial formal agreement?"  Pl.'s Mot. for Summ. J at 5 n.2.  This question directly inquired about a mandatory eligibility requirement contained in the statute, 15 U.S.C. § 9009a(a)(3)(A)(i)—i.e., what is referred to as the eligibility matrix, A.R. at 000586–96 (SVOG Eligibility Matrix) ("[Eligibility requirement No.] 5. Must pay performers based on a percentage of sales, a guarantee, or other mutually beneficial arrangement other than complementary food and beverage."), and the frequently asked questions, A.R. at 000597–637 (SVOG Frequently Asked Questions April 23, 2021) ("[Question] 11. . . . The Economic Aid Act's live venue operator or promoter definition requires an entity to have as its principal business activity[]: [ ] Organizing, promoting, producing, managing, or hosting events by performing artists for which admission fees are charged and performers are paid based on a percentage of sales, a guarantee, or other mutually beneficial formal arrangement[.]").

While the plaintiff argues the wording of question twenty-two is "extremely vague and confusing[,]" Pl.'s Mot. at 5 n.2, the requirements of the SVOG were listed in three separate places, and "participants in federal programs must familiarize themselves with the requirements[ of those programs, such as the SVOG]," Scollick ex rel. United States v. Narula, No. 14-cv-1339 (RCL), 2022 WL 3020936 at *13 (D.D.C. July 29, 2022).  Because the plaintiff answered "No" to a mandatory eligibility requirement, the denial was self-explanatory.  In other words, the plaintiff was "fully informed" of why its application had been denied, Roelofs, 628

16

F.2d at 601, because the plaintiff itself stated it did not satisfy an eligibility requirement in its application. To the extent that there exists conflicting evidence in the record that might rebut the agency's conclusion, "balancing conflicting evidence is the agency's job, not [that of the Court's.]" Atl. Arts Found. v. Small Bus. Admin., 22-cv-2109 (DLF), 2023 WL 8101074 at *4 (D.D.C. Nov. 21, 2023). Thus, the Court will not disturb the agency's decision where it reviewed all of the evidence before it and came to a reasoned conclusion on the plaintiff's application.

Because the reason for the denial was self-explanatory, the defendants were not required to specify the grounds for the denial, and therefore, the denial is not arbitrary and capricious. See 5 U.S.C. § 555(e) ("Except in in affirming a prior denial or when the denial is self-explanatory, the notice [of the denial] shall be accompanied by a brief statement of the grounds for denial."). Accordingly, the Court concludes that the defendants' motion for summary judgment must be granted, and the plaintiff's motion for summary judgment must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court (1) denies the plaintiff's motion for consideration of extra-record evidence, (2) denies the plaintiff's motion for a preliminary injunction, (3) denies the plaintiff's motion for summary judgment, and (4) grants the defendants' motion for summary judgment.

**SO ORDERED** this 5th day of December, 2024.[2]

REGGIE B. WALTON<br>United States District Judge

---

[2] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.